IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO SIERRA,<br><br>    Plaintiff,<br><br>  v.<br><br>T. PATTERSON, et al.,<br><br>    Defendants. | No.  2:21-CV-2396-JAM-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff brings suit against the following twelve defendants: (1) T. Patterson, former California Department of Corrections and Rehabilitation (CDCR) CEO of Medical Leadership at Mule Creek State Prison (MCSP); (2) D. Smiley, current CDCR CEO of Medical Leadership at MCSP; (3) B. Ly, dentist at MCSP; (4) Duong, dentist at MCSP; (5) Kumar, dentist at MCSP; (6) D. Moore, dentist at MCSP; (7) B. Archibald, supervising dentist at MCSP; (8) Linzy, dental assistant at MCSP; (9) Jane Doe 1, dental assistant at MCSP; (10) Jane Doe 2, dental assistant at MCSP; (11) MSCP generally; and (12) Jane Doe 3, apparently a medical assistant at MCSP. Plaintiff does not number the Jane Does, and it is unclear from the complaint precisely which actions are attributable to each. It is also unclear if Jane Doe 3 exists separately from Jane Does 1 and 2 and, if so, whether or not he alleges a cause of action against Jane Doe 3.

Plaintiff appears to allege medical malpractice. However, his stated claims are for unspecified violations of the Eighth Amendment and for retaliatory measures in violation of the First Amendment.

### A. Defendants Duong and Jane Does 1-3

Plaintiff alleges that on or about January 16, 2020, Defendants Jane Doe 2 and Duong removed his lower left molar tooth, initiating the sequence of events which immediately preceded the assault. See ECF 1, pg. 5. On January 16, 2020, Plaintiff visited Defendant Duong for a filling on his lower left molar tooth. See id. at 8. Plaintiff states that prior to the procedure, Defendant Duong gave Plaintiff an injection which numbed his entire face. See id. Plaintiff claims that after he brought this effect to the attention of Defendant Duong and an unspecified assistant, Defendant Duong and his assistant made jokes about the fact that Plaintiff was not meant to receive that injection for that particular procedure that day. See id. Plaintiff asserts that

2

when he pointed out the awkwardness he felt with regards to these jokes, Defendants Duong and Jane Does 1 and 2 told him to stop complaining and made remarks about the fact that inmates received free treatment. See id.

Plaintiff states that as his numbness subsided, he began experiencing chills and pain in his mouth. See id. He claims that he felt that his molar had been dug out or chipped. See id. Plaintiff asserts that, two to three weeks later, he brought this to the attention of a medical assistant, Defendant Jane Doe 3, who had been present the day of the procedure. See id. Plaintiff states that Defendant Jane Doe 3 raised her voice and told Plaintiff to complete a medical form. See id.

Plaintiff claims that on March 9, 2020, he was called back to the dental office, where he asked to speak with Defendant Duong about allegedly damaging his molar. See id. Plaintiff claims that unspecified staff were "defensive," id., in response to this inquiry.

B. Defendant Kumar

Plaintiff states that Defendant Kumar built on the damage caused by Defendant Duong by creating a space in between Plaintiff's center front teeth. See id. at 6. On March 9, 2020, Plaintiff returned to the dental office following his appointment with Defendant Duong, apparently to have his bottom teeth cleaned. See id. at 8. Defendant Kumar attended to Plaintiff. See id. Plaintiff states that he informed Defendant Kumar that his molar felt as though it had been damaged or dug out. See id. Plaintiff alleges that Defendant Kumar told Plaintiff he was in good hands, but seemed "sarcastic." Id.

Plaintiff alleges that during this appointment, Defendant Kumar carved a gap between Plaintiff's two bottom center teeth. See id. Plaintiff states that this gap had not existed previously. See id. Plaintiff states that he filed a grievance regarding the incident and indicated that he would be filing a medical malpractice lawsuit against MCSP generally. See id. Plaintiff also states that he has heard of similar incidents in the prison yard. See id. at 8-9.

///

///

///

### C. Defendant B. Ly

#### 1. Assault

Plaintiff alleges that in September 2021, Defendant Ly assaulted him in retaliation for his medical malpractice grievances against MCSP. See id. at 4, 12. Plaintiff states that on August 30, 2021, he was involved in a "misunderstanding" related to "IEX [sic] allegations," id. at 9, resulting in his temporary placement in administrative segregation, see id. He also states that he has been active in advocating for prisoner rights at the MCSP facility. See id. at 12.

Plaintiff alleges that at some time during the first or second week of September, 2021, after he was placed in administrative segregation, Defendant Ly came to speak with him. See id. at 4. Plaintiff claims that Defendant Ly informed him that he had a dental appointment for a "continuous" treatment from his prior appointment. Id. Plaintiff states that he was confused by this information because it had been "quite a while" since he had last visited the dental clinic and he did not remember any such treatment mentioned to him. Id. Plaintiff claims that he inquired about this in front of Correctional Officer DeFazio, and then agreed to go to the dental clinic with Defendant Ly. See id.

Once at the dental office, Plaintiff claims that he again questioned Defendant Ly about the purpose of the visit. See id. Plaintiff claims that Defendant Ly informed him that if he did not have the treatment performed, the teeth could require removal in the future. See id. Plaintiff states that he agreed to the treatment as he was "terrified," id., of the apparent possibility of losing these teeth. See id.

Plaintiff alleges that Defendant Ly began by examining Plaintiff's teeth and informing Plaintiff that his teeth had many cracks. See id. According to Plaintiff, Defendant Ly informed Plaintiff that Plaintiff required fillings on his front teeth, then fitted Plaintiff with a "sort of mask/brace" to keep his mouth open while fillings were being performed. Id. Plaintiff claims that Defendant Ly explained to him that they had started using the mask due to concerns about COVID-19. See id.

///

///

After receiving an injection in his gums, Plaintiff claims that his whole face became numb. See id. at 9-10. Plaintiff also claims that he informed Defendant Ly of his previous dental complaint as well as Defendant Duong's "unethical conduct." Id. at 10. Plaintiff states that Defendant Ly assured him that he would not mistreat him. See id.

Plaintiff states that after Defendant Ly finished the procedure, he felt strange; he states that his mouth felt different and he felt dazed and "discombobulated." Id. at 10. Plaintiff states that he asked for and received a mirror, and that at that time he noticed and was able to point out several changes to his teeth. See id. Plaintiff claims that Defendant Ly only allowed Plaintiff to use the mirror for a short period, and informed Plaintiff that there was nothing wrong with his teeth. See id.

Plaintiff states that as his numbness resolved, he began to feel chills throughout his body at times when eating; he claims that this had not occurred prior to the procedure. See id. Plaintiff states that he then submitted a medical slip and was once again sent to see Defendant Ly. See id. Plaintiff claims that Correctional Officer Larson was present during the appointment and that Defendant Ly was "defensive," id., asking Plaintiff what he was complaining about and stating that Plaintiff used his teeth to open bottles. See id. Plaintiff claims that he responded by laughing and asking how he would have access to bottles. See id. Plaintiff states that Defendant Ly then asked him what he did open with his teeth, to which Plaintiff responded that he used his teeth to open condiment packets. See id. at 10-11. Plaintiff states that Defendant Ly once again told him that there was nothing wrong with his teeth. See id. at 11. Plaintiff alleges that he then attempted to show the disfiguration to Defendant Ly's assistant, but that Defendant Ly prevented him from doing so and once again told Plaintiff that there was nothing wrong with his teeth. See id. Plaintiff states that no mirrors were available to him in administrative segregation. See id.

Plaintiff claims that he was able to thoroughly examine his teeth after being released from administrative segregation on October 9, 2021. See id. He states that six of his front teeth were damaged; in all, he claims that (1) a piece was cut off of a tooth, (2) a tooth was sanded "from the bottom up," id. at 14, and made shorter, (3) the side of a tooth was sanded "a little bit," id., (4) that a tooth has two white spots that were not present previously, (5) that a

5

chunk was "carved out" of a tooth, (6) that a concave curved area is now present along the bottom of a tooth, (7) that his bottom front teeth had previously been straighter, (8) that a tooth had a substance added that made it "thicker," id., and (9) that a tooth was sanded or carved out to make it even with the other side. See id. Plaintiff states that he then filed a grievance and later submitted another medical slip to see dental. See id. at 11. Plaintiff also states that as a result of his experience, he saw a mental health care provider, Dr. Dreiss, on November 4, 2021. See id.

### 2. Inhumane Act

Plaintiff also appears to allege that Defendant Ly deliberately committed an unspecified "inhumane act." Id. at 4. The complaint is ambiguous as to whether or not this is simply referring to the existing allegation of assault.

### D. Concealment

Plaintiff claims that Defendants Moore and Linzy worked in concert to conceal Defendant Ly's actions. See id. He states that on November 9, 2021, he returned to dental and spoke with Defendants Moore and Linzy. See id. at 11. Plaintiff states that he explained what had happened on previous visits to the dental office to Defendants Moore and Linzy. See id. Plaintiff claims that at this visit, Defendant Linzy told him to relax and that he would take new X-rays of Plaintiff's teeth and compare them to X-rays taken in January 2021. See id. Plaintiff claims that Defendant Moore conceded to him that Defendant Ly had made one of Plaintiff's teeth smaller, but told Plaintiff that Defendant Ly was most likely trying to even out Plaintiff's teeth due to the presence of a chip. See id. at 11-12. Plaintiff claims that he then asked Defendants Moore and Linzy to evaluate another tooth, but that they asked him to leave and he complied. See id. at 12. Plaintiff asserts that he had simply requested that his teeth be restored to their previous condition. See id.

### E. Conspiracy

Plaintiff alleges that Defendant Patterson may have conspired to influence Defendant Ly to assault Plaintiff. See id. at 4. Plaintiff claims that at or around the time he was assaulted, Defendant Patterson left his position as CDCR CEO of Medical Leadership at MCSP. See id. Plaintiff states that prior to the assault and Defendant Patterson's departure, Plaintiff had

filed a grievance regarding medical malpractice and stated his intention to file litigation. See id.

### F. Failure to Remedy

Plaintiff states that Defendant Archibald concealed Defendant Ly's actions and determined that no policies had been violated. See id. at 5. Specifically, Plaintiff claims that on November 19, 2021, he spoke to Defendant Archibald about his complaint, and Defendant Archibald personally examined Plaintiff's teeth. See id. at 13. Plaintiff also states that he wrote to Warden Patrick Covello and asked for Mr. Covello to send someone he trusted to evaluate Plaintiff's teeth for the purposes of establishing proof of misconduct. See id. at 13-14.

Plaintiff additionally claims that as the new CEO of Medical Leadership at MCSP, Defendant Smiley has not taken action to address Plaintiff's alleged harm. See id. at 5.

### H. Support of Violation

Plaintiff states that Defendant Jane Doe 1 allowed and/or supported, and did not say anything about, Defendant Ly's actions. See id.

## II. DISCUSSION

As currently written, none of Plaintiff's claims are cognizable. Plaintiff's claims against Defendants Duong, Patterson, Archibald, Smiley, and Jane Does 1, 2, and 3 fail to allege specific wrongdoing or a causal link between their actions and Plaintiff's injuries. The allegations against Defendants Kumar and Ly fall short of the relevant Eighth Amendment standards for prison officials. Furthermore, Plaintiff's retaliation claim against Defendant Ly fails to meet the relevant First Amendment standard. Additionally, there is a lack of factual support underpinning Plaintiff's allegations against Defendants Moore, Linzy, and Jane Doe 1. Finally, Plaintiff's claim against MCSP is not cognizable because state agencies are immune to lawsuits by citizens.

### A. Causation

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning

§ 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

### 1. Standard for Medical Treatment

Alleged negligence in diagnosing or treating a medical condition, including dental problems, does not give rise to a claim under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Although Plaintiff alleges that the procedure performed by Defendant Duong and assisted by Defendants Jane Does 1 and 2 ultimately resulted in the need for follow-up treatment and the alleged assault by Defendant Ly, he fails to allege cognizable wrongdoing or causation. At most, Plaintiff alleges dissatisfaction with his dental care. This is also true of Defendant Jane Doe 3, who appears to have been involved only by being physically present in some way on the day of the procedure and telling Plaintiff to complete a medical form when he complained about the dental work he had received.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### 2. Specificity

#### a. Defendants Duong and Jane Does 1-3

As previously noted, vague and conclusory allegations are insufficient to sustain a complaint. Plaintiff's allegations do not indicate any specific misconduct by the above-mentioned Defendants. None of these Defendants are alleged to have committed an affirmative act in furtherance of the alleged assault; furthermore, Plaintiff does not allege that any of these Defendants participated in the alleged assaults or that failure to do some legally required act

8

caused the deprivation in question. Without factual allegations that any affirmative actions or omissions of legally required actions occurred, Plaintiff's claim against Defendants Duong and Jane Does 1-3, described above, fails to allege the necessary specific causal link, and therefore does not state a cognizable claim under § 1983.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### b. Defendants Linzy and Moore

Plaintiff's claim against Defendants Linzy and Moore appears to allege that these defendants deliberately concealed the wrongfulness of Defendant Ly's actions as part of a cover up of the same. However, this allegation lacks factual support, and is based on conclusory speculation. As currently stated, Plaintiff seems to allege that, rather than rendering a professional opinion which differed from Plaintiff's own opinion, Defendants were instead engaging in a conspiracy to cover up Defendant Ly's malfeasance. Such a claim requires concrete factual substantiation, and fails to meet the pleading specificity standard described above.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### c. Defendant Jane Doe 1

Plaintiff's separate allegations against Defendant Jane Doe 1 only are also deficient for lack of specificity. Plaintiff alleges that Defendant Jane Doe 1 "allow[ed] and support[ed] and [did not say] anything about dentist B. Ly's inhumane actions." ECF No. 1, pg. 5. Besides being physically present and "supporting" Defendant Ly, Plaintiff makes no specific allegations about what precise actions Defendant Jane Doe 1 may or may not have taken which directly caused Plaintiff's alleged injury.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### B. Eighth Amendment Standards for Prison Officials

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Thus, to violate the Eighth Amendment, a prison official

must have a "sufficiently culpable mind." See id. Furthermore, as previously noted, an allegation of negligence in providing dental treatment does not fall within the purview of the Eighth Amendment.

### 1. Defendants Kumar, Moore, and Linzy

Plaintiff's allegations against Defendants Kumar, Moore, and Linzy do not suggest that either prong of the Eighth Amendment standard is met. Plaintiff does not allege that the actions of these Defendants resulted in the "denial of the minimal civilized measure of life's necessities," nor does he allege that these Defendants acted negligently or unnecessarily and wantonly for the purpose of inflicting harm. These defects are not cured by Plaintiff's vague and unsubstantiated claim of hearing similar stories from other inmates. Therefore, Plaintiff's allegations against Defendants Kumar, Moore, and Linzy fail to state a cognizable claim under the Eighth Amendment.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### 2. Defendant Ly

Plaintiff's allegations against Defendant Ly also fall short. Plaintiff alleges that Defendant Ly's actions were an act of reprisal for his prior prisoner rights advocacy. See ECF No. 1, pgs. 12-13. However, Plaintiff presents no concrete factual claims which would substantiate such a belief; instead, he appears to make this leap based on personal belief and the timing of a prison executive's departure. See id.

Plaintiff also fails to substantiate claims that this is something other than a disagreement between patient and dentist regarding treatment decisions. As previously noted, a difference of opinion between prisoner and provider concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. This is compounded by the fact that both second and third opinions, as stated in the complaint, seem to point towards this situation representing such a disagreement. Plaintiff indicates that both Defendant Moore and Defendant Archibald examined his teeth after Defendant Ly treated him, and that Defendant Moore opined that the alteration was likely due to an attempt to improve the appearance of the tooth due to a chip. After examining Plaintiff's teeth, Defendant Archibald apparently also did not point out to

Plaintiff anything that seemed objectionable. See id. at 11-13. These are insufficient grounds for an Eighth Amendment claim.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### 3. Defendant Jane Doe 1

It is not evident that Defendant Jane Doe 1 had the requisite state of mind required for Eighth Amendment liability even if a causal link were found. As previously noted, in order to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." Farmer, 511 U.S. at 834. Other than some apparently discomfiting remarks regarding the anesthetic itself, there is no evidence other than Plaintiff's own assumptions and suspicions that Defendant Jane Doe 1 possessed the "sufficiently culpable mind" required for a finding of misconduct under the Eighth Amendment.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### C. Retaliation

To state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

/ / /

1          As to the chilling effect, the Ninth Circuit in <u>Rhodes</u> observed: "If Rhodes had not
2   alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm
3   that is more than minimal will almost always have a chilling effect." <u>Id.</u> at n.11. By way of
4   example, the court cited <u>Pratt</u> in which a retaliation claim had been decided without discussing
5   chilling. <u>See id.</u> This citation is somewhat confusing in that the court in <u>Pratt</u> had no reason to
6   discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate
7   penological interests. <u>See</u> <u>Pratt</u>, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated
8   that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action
9   "chilled the inmates exercise of his First Amendment rights," <u>id.</u> at 567-68, <u>see also</u> <u>Resnick</u>, 213
10  F.3d at 449, the comment in <u>Rhodes</u> at footnote 11 suggests that adverse action which is more
11  than minimal satisfies this element. Thus, if this reading of <u>Rhodes</u> is correct, the chilling effect
12  element is essentially subsumed by adverse action.

13         Here, Plaintiff's allegations fail to satisfy the elements required to state a claim of
14  retaliation. First, as discussed above, it is unclear at this time as to whether prison officials took
15  adverse action at all, given the conduct of Defendants Moore and Archibald after examining
16  Plaintiff's teeth. Furthermore, Plaintiff's allegations that Defendant Ly engaged in wrongful
17  behavior as retaliation for Plaintiff's advocacy are wholly conclusory and apparently supported
18  by nothing more than a temporal coincidence. Although Plaintiff does not indicate that a chilling
19  effect took place, it is possible that this element could be met under <u>Rhodes</u> if, and only if,
20  Plaintiff is able to successfully allege the adverse action element of this claim. Finally, the
21  complaint does not discuss a "legitimate penological purpose," and we do not find the existence
22  of such a purpose on the face of the complaint. Therefore, Plaintiff's deficiencies in this claim lie
23  in the required adverse action and intent element. To state a viable claim, however, all four
24  elements must be met.

25         Plaintiff shall be given leave to amend to cure the deficiencies identified above.

26         D. <u>Supervisor Liability</u>

27         Supervisory personnel are generally not liable under § 1983 for the actions of their
28  employees. <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

1 respondeat superior liability under § 1983). A supervisor is only liable for the constitutional
2 violations of subordinates if the supervisor participated in or directed the violations. See id. The
3 Supreme Court has rejected the notion that a supervisory defendant can be liable based on
4 knowledge and acquiescence in a subordinate's unconstitutional conduct because government
5 officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct
6 and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

7 When a defendant holds a supervisory position, the causal link between such
8 defendant and the claimed constitutional violation must be specifically alleged. See Fayle v.
9 Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
10 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in
11 civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.
12 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's
13 own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

14         1. Defendant Patterson

15 Plaintiff's allegation against Defendant Patterson is devoid of such a causal
16 connection. The language of Plaintiff's allegation is that Defendant Patterson "*could* have been
17 involved in *possibly conspiring* to *influence* [Defendant] Ly." ECF No. 1, pg. 4 (emphasis added).
18 This is simply too vague and tenuous an allegation to meet the established standard. No specific
19 conduct by Defendant Patterson is alleged, and Plaintiff's allegation is based entirely on the
20 apparently suspicious timing of Defendant Patterson's departure from MCSP. There is no
21 suggestion that Defendant Patterson participated in Defendant Ly's conduct; there is merely
22 speculation, without evidence, about why Defendant Patterson *might* have directed Defendant Ly
23 to take adverse action against Plaintiff. Because no actual causal link, substantiated by facts, is
24 alleged between Defendant Ly's conduct and individual actions taken by Defendant Patterson,
25 this allegation fails to state a claim under § 1983.

26 Plaintiff shall be given leave to amend to cure the deficiencies identified above.
27 / / /
28 / / /

### 2. Defendant Archibald

Plaintiff's claim against Defendant Archibald fails largely for the same reasons as his claim against Defendant Patterson; the required causal link or specific participation in or direction of the action is not present. Plaintiff's claim that Defendant Archibald "cover[ed] up for this inhumane act and [made] an unprofessional determination that said no policies were violated," ECF No. 1, pg. 5, is an opinion, not a factual allegation. In addition to providing no factual allegations to support these claims, Plaintiff is not a dental practitioner qualified to determine whether or not Defendant Archibald's assessment was "professional."

Plaintiff shall be given leave to amend to cure the deficiencies mentioned above.

### 3. Defendant Smiley

Plaintiff's claim against Defendant Smiley also appears to impose supervisor liability where no causal link has been alleged. Plaintiff's complaint seems to indicate that Defendant Smiley should be held liable for failure to remedy the alleged harm resulting from Defendant Ly's actions. The timeline of these events is somewhat imprecise, but it appears that Plaintiff alleges that Defendant Patterson, not Defendant Smiley, oversaw medical care at the facility at the time of Plaintiff's alleged injury. If this is the case, then it is impossible for Defendant Smiley to have participated in, directed, or otherwise caused Plaintiff's alleged injuries.

To the extent that Plaintiff's claim against Defendant Smiley relates to failure to adequately address his grievances, the Ninth Circuit has held that prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly

process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Therefore, the alleged failure of Defendant Smiley to adequately address Plaintiff's claim through the grievance process is not a cognizable claim under § 1983.

Plaintiff shall be given leave to amend to cure the deficiencies mentioned above.

### E. Agency Immunity

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

Plaintiff seems to vaguely allege a claim of medical malpractice against MCSP generally, rather than additional individuals within the organization. However, because MCSP operates under CDCR, a state agency responsible for correction and incarceration, Plaintiff is barred from stating a cause of action against MSCP. Plaintiff may, however, amend this complaint to name a proper defendant or defendants.

Finally, Plaintiff's references to Jane Does are confusing and ambiguous. Although numbered by the Court here in an attempt to separate these individuals in its analysis, the complaint is unclear as to whether there are two Jane Does or three, and it is equally unclear as to which allegations are made against which Jane Doe. If Plaintiff's amended complaint makes reference to Jane Does, Plaintiff is instructed to number them in such a way that each defendant

can be given fair notice of the claims against them. Plaintiff is also encouraged to identify these individuals by name if possible.

Plaintiff shall be given leave to amend to cure the deficiencies identified above.

### III. CONCLUSION

Because one of the defects identified in this order cannot be cured by amendment, Plaintiff is not entitled to leave to amend as to that claim. Plaintiff, therefore, now has the following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the Court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the Court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed; and

2. Plaintiff shall file an amended complaint within 30 days of the date of service of this order.

Dated: June 14, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE